# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

BRENT LAVON DAVIS,
ADC #149851                                                                              PLAINTIFF

V.                                          1:14CV00046 DPM/JTR

RHONDA STANFORD,
Nurse, Grimes Unit, ADC, et al.                                                 DEFENDANTS

## RECOMMENDED PARTIAL DISPOSITION

The following Recommended Partial Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I. Introduction

Plaintiff, Brent Lavon Davis, is a prisoner in the Grimes Unit of the Arkansas Department of Correction ("ADC"). In this *pro se* § 1983 action, he alleges that, in September of 2013, Defendants failed to provide him with constitutionally adequate medical care for chest pains. *Doc. 2.*

Separate Defendants Nurse Rhonda Stanford and Health Services Administrator Billy Cowell have filed a Motion for Summary Judgment, and Plaintiff has filed a Response. *Docs. 57, 58, 59, 65, 68, 69, 70, 72 & 73.* For the following reasons, the Court recommends that: (1) the Motion for Summary Judgment be granted; (2) Plaintiff's claims against Defendant Cowell be dismissed, without prejudice, due to a lack of exhaustion; and (3) Plaintiff's claims against Defendant Stanford be dismissed, with prejudice, as a matter of law.[1]

## II. Facts

The relevant facts, viewed in the light most favorable to Plaintiff, are as follows:

---

[1] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

1. In September of 2013, Plaintiff was confined in a single-man cell in the administrative segregation area of the Grimes Unit. Because Plaintiff was taking blood pressure medication, his pulse and blood pressure were periodically checked by nurses conducting rounds in administrative segregation. *Doc. 58, Exs. 2 & 3.*

2. From September 23 to 27, 2013, Plaintiff's heart rate was within normal limits and his blood pressure was slightly elevated at 123/84 and 136/80. However, he did not report any chest pains or other cardiac symptoms to the nurses conducting segregation rounds. *Id., Ex. 2.*

3. On September 28, 2013, Plaintiff did not voice any complaints during segregation rounds conducted at 12:07 p.m. and 4:45 p.m. *Id.* However, he later had chest pains, passed out in his cell, and hit his head on the cell floor. *Id.*

4. At 9:36 p.m. on September 28, 2013, correctional officers reported to Defendant Nurse Stanford that Plaintiff was unresponsive on the floor of his cell. Because ADC policy prohibited her from entering the cell, Defendant Stanford assessed Plaintiff through the cell door. She noted that he was not bleeding; he was breathing at a normal rate; and his breaths were even and unlabored. After approximately ten minutes, Plaintiff rubbed his face, rolled over, and sat up against the wall of his cell. Plaintiff told Defendant Stanford that his head hurt and that his vision was blurred. Defendant Stanford explained to Plaintiff that ADC policy

prevented her from entering his cell, and she asked him to come to the cell door so that correctional officers could place him in restraints and escort him to the prison infirmary for evaluation and treatment. Plaintiff said he was unable to do so. *Doc. 58, Ex. 2; Doc. 69, Ex. 2*. However, during his deposition, Plaintiff admitted that he could have "scooted" to the cell door on his bottom, which is how he later obtained and completed two grievance forms that evening. *Doc. 58, Ex. 3 at 7, 13-14*.

5. After observing Plaintiff for several more minutes, Defendant Stanford returned to the infirmary and instructed the two correctional officers to check him every fifteen minutes. *Doc. 58, Ex. 2*.

6. Later that evening, a sergeant reminded Plaintiff that he could go to the infirmary for evaluation and treatment if he would approach his cell door and allow officers to place him in restraints. Plaintiff refused. *Id.*

7. At approximately 1:30 a.m. on September 29, 2013, a non-party nurse checked on Plaintiff during segregation rounds. He did not voice *any* medical complaints. *Id.*

8. Over the next six days, Plaintiff did not complain about his medical condition. *Id.*

9. On October 5, 2013, Plaintiff reported chest pains to a correctional officer working in administrative segregation. Plaintiff allowed the correctional

officers to place him in restraints and escort him to the infirmary. A non-party nurse examined Plaintiff, determined that his vital signs were within normal limits, and noted that there were no signs of cardiac distress. She then asked Plaintiff to submit to an EKG. Plaintiff refused to do so and returned to his cell. *Id.* at 16.

10. On November 1, 2013, Defendant Cowell reviewed and denied both of the grievances Plaintiff filed on September 28, 2013. *Id., Ex. 1*.

11. ADC Regional Director Dr. Robert Floss has filed a sworn affidavit stating that "the evaluation and care provided by [Defendant] Stanford was medically appropriate and satisfactory" and that her care had "no adverse effect on Mr. Davis's prognosis." *Id., Ex. 2 at 3*.

### III. Discussion

**A.    Claims Against Defendant Cowell**

Plaintiff alleges that Defendant Cowell denied him constitutionally adequate medical care: (1) by not taking corrective action after he reviewed Plaintiff's grievances about the inadequate medical care allegedly provided by Defendant Stanford; and (2) by failing to train Defendant Stanford on how to respond to a medical emergency in the administrative segregation area. *Doc. 2*. Defendant Cowell argues that he entitled to summary judgment because Plaintiff failed to properly exhaust his administrative remedies on both of those claims. The Court concludes

that this argument is well taken.[2]

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81-89-91 (2006).

The PLRA requires inmates to: (1) fully and properly exhaust their administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000).

---

[2] Plaintiff argues that Defendant Cowell waived his exhaustion argument because he failed to raise it prior to the September 12, 2014 deadline for filing motions on the issue of exhaustion. *Doc 65.* The Court finds no merit to this argument First, Defendant Cowell properly preserved his exhaustion defense in his Answer, which was filed on July 11, 2014. *Doc. 15.* Additionally, when the September 12, 2014 deadline expired, Defendant Cowell had a Motion for Judgment on the Pleadings pending before the Court. *Doc. 27.* After that Motion was denied, Defendant Cowell promptly raised his exhaustion argument in the current Motion for Summary Judgment, which was timely filed. *Doc. 57.* Finally, Plaintiff was not prejudiced, in any way, by Defendant Cowell raising his exhaustion argument in the pending Motion for Summary Judgment, rather than in a similar motion filed on or before September 12, 2014.

Importantly, the Supreme Court has emphasized that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must fully comply with the specific procedural requirements of the incarcerating facility. *Id.*

To fully exhaust administrative remedies about a medical matter, an ADC prisoner must file: (1) an informal resolution with the medical staff; (2) a grievance with the Health Services Administrator, if the attempt at informal resolution is unsatisfactory; and (3) appeal the denial of that medical grievance to the ADC Deputy Director for Health and Correctional Programs. *Doc. 58, Ex. 1* (ADC Adm. Dir. § 12-16 IV(E) through (G) (2012). Importantly, the ADC's exhaustion policy requires inmates to "specifically name each individual" involved, and those instructions are repeated on the grievance forms themselves. *Id.* (§ IV (C)(4), (E)(2), and (N)). Finally, the ADC's exhaustion policy advises prisoners that their federal lawsuit may be dismissed if they fail to comply with those requirements. *Id.*

In this case, the parties *agree* that Plaintiff fully exhausted two grievances complaining about the medical care he received on September 28, 2013. *Docs. 58 &*

*69.* In grievance GR-13-1896, he alleged that unspecified "medical" personnel failed to provide him with adequate medical care on September 28, 2013. *Doc. 58, Ex. 1 at 21-26.* In GR-13-1897, he specifically identified only *Defendant Stanford* as the person who failed to provide him with adequate medical care on September 28, 2013. *Id.*

Defendant Cowell was not personally involved in providing or failing to provide Plaintiff with any medical care. Rather, Defendant Cowell's sole involvement in this matter took place on November 1, 2013, when he reviewed and denied Plaintiff's two grievances complaining about the medical care he had received on September 28, 2013. Defendant Cowell's decisions to deny those grievances were later affirmed on appeal.

Importantly, Plaintiff did *not* name *Defendant Cowell* in any grievances raising either of the claims he is now attempting to assert against him: that Defendant Cowell failed to take corrective action after he reviewed Plaintiff's grievance charging Defendant Stanford with providing him with inadequate medical care; and that Defendant Cowell failed to properly train Defendant Stanford. Thus, with regard to the claims Plaintiff has asserted against Defendant Cowell in this action, he clearly has not complied with the ADC's exhaustion policy or the PLRA's exhaustion requirement. As a result, ADC officials have not been allowed an opportunity to

investigate these claims and reach the merits of the allegations Plaintiff is now asserting against Defendant Cowell, *for the first time*, in this § 1983 action.

Accordingly, based on Plaintiff's failure to exhaust his administrative remedies, Defendant Cowell is entitled to summary judgment, and both of the claims Plaintiff is asserting against him in this action should be dismissed, without prejudice. *See Jones*, 549 U.S. at 211 (2007) (explaining that: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"); *Barbee v. CMS,* Case No. 10-1891, 2010 WL 3292789 (8th Cir. Aug. 23, 2010) (unpublished opinion) (holding that a trial court cannot reach the merits of unexhausted claims which must be dismissed, without prejudice).

**B.     Inadequate Medical Care Claim Against Defendant Stanford**

Plaintiff alleges that, on September 28, 2013, Defendant Stanford failed to provide him with constitutionally adequate medical care after he had chest pains and passed out in his cell. *Doc.2.*

To prevail on that claim, Plaintiff must prove that: (1) he had an objectively serious medical need for medical treatment; and (2) Defendant Stanford subjectively knew of, but deliberately disregarded, that serious medical need. *See Estelle v. Gamble,* 429 U.S. 97 (1976); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997).

The parties agree that Plaintiff had an objectively serious need for medical care, on September 28, 2013, when he experienced chest pains and passed out in his cell. *Docs. 58 & 69.* Thus, the relevant inquiry is whether Defendant Stanford acted with deliberate indifference in the way she responded to that situation. It is well settled that negligence and even gross negligence do not constitute deliberate indifference. *Langford*, 614 F.3d at 640; *Gibson v. Weber*, 433 F.3d 643, 646 (8th Cir. 2006). Instead, deliberate indifference "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, there "must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

There is nothing in the record to suggest that Defendant Stanford was deliberately indifferent to Plaintiff's medical needs. It is *undisputed* that Defendant Stanford promptly went to his cell as soon as she learned that he had passed out. It is also *undisputed* that, pursuant to ADC policy, Defendant Stanford observed Plaintiff from outside of his cell, determined that he was not in distress, and gave him the opportunity to come to the cell door to be restrained and escorted to the infirmary for further evaluation and treatment. Plaintiff voluntarily declined that opportunity.

Plaintiff argues that Defendant was deliberately indifferent because she did not call for an Emergency Response Team to remove him from his cell and transport him

to the infirmary. As previously explained, Defendant Stanford determined, in her professional medical judgment, that it was unnecessary to do so. *See Dulany*, 132 F.3d at 1239 (holding "inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment"). The soundness of this decision by Defendant Stanford is supported by Dr. Floss's *uncontroverted* medical opinion that Defendant Stanford's actions were "medically appropriate and satisfactory" and had "no adverse effect on Mr. Davis's prognosis," as well as the undisputed medical records establishing that Plaintiff did not voice any medical complaints later that evening or during the following five days. *See Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (explaining that: "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment"); *Gibson*, 433 F.3d at 646-47 (8th Cir. 2006) (explaining that, to avoid summary judgment, an inmate must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment). Finally, Plaintiff *admitted* during his deposition that he was not harmed, in any way, by not being taken to the infirmary on September 28, 2013. *Doc. 58, Ex. 3 at 10 & 15.*

Thus, as a matter of law, Defendant Stanford is entitled to summary judgment of the inadequate medical care claim Plaintiff has raised against her and that claim should be dismissed, with prejudice.

### IV. Conclusion

IT IS THEREFORE RECOMMENDED that:

1. Defendant Cowell's and Stanford's Motion for Summary Judgment *(Doc. 57)* be GRANTED.

2. Plaintiff's claims against Defendant Cowell be DISMISSED, WITHOUT PREJUDICE,

3. Plaintiff's claim against Defendant Stanford be DISMISSED, WITH PREJUDICE.

4. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

Dated this 13th day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE